UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DUFFIE ALEXANDER,                           )<br>                                             )<br>            Plaintiff,                       )<br>                                             )<br>    -vs-                                     )<br>                                             )<br>KILOLO KIJAKAZI,[1]                           )<br>Acting Commissioner of Social Security,      )<br>                                             )<br>            Defendant.                       )<br>_____         ) | Civil Action No.: 4:20-cv-03513-TER<br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I.  RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application on August 13, 2018, alleging disability beginning on July 22, 2017. (Tr. 10). Plaintiff had a prior final ALJ order of dismissal dated July 26, 2017. (Tr. 62). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on February 27, 2020, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 10). The Administrative Law Judge (ALJ) issued an unfavorable decision on

---

[1] Recently, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

March 25, 2020, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 10-20). Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied the request for review. On October 5, 2020, Plaintiff filed this action. (ECF No. 1).

**B.     Plaintiff's Background and Medical History**

Plaintiff was born on February 25, 1966, and was fifty-one years old on the alleged disability onset date. (Tr. 19). Plaintiff has past relevant work of janitor and kitchen helper. (Tr. 18). Plaintiff alleges disability originally due to "bad ankle" and "heart problems." (Tr. 64).

**C.     The ALJ's Decision**

In the decision of March 25, 2020, the ALJ made the following findings of fact and conclusions of law (Tr. 10-20):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since July 22, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: right ankle fracture; history of right knee fracture; congestive heart failure (CHF); hypertension; and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; but never climbing ladders, ropes, or scaffolds; and he can have no exposure to workplace hazards. He is further limited to simple routine tasks performed two hours at a time.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 25, 1966 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 22, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in the RFC determination by not explaining how the finding of a moderation limitation in ability to maintain concentration, persistence, and pace was accounted for in the RFC of simple routine tasks performed two hours at a time. Plaintiff argues the ALJ erred in making the RFC determination as to Plaintiff's standing and walking abilities in the right lower extremity. The Commissioner argues the decision was supported by substantial evidence.

A.  **LEGAL FRAMEWORK**

   1.  **The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.  The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner

are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.    ANALYSIS**

**RFC**

Plaintiff argues the ALJ erred in the RFC determination as to concentration, persistence, and pace(CPP) and as to physical limitations.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c).

6

In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

*CPP*

Plaintiff argues the ALJ erred in the RFC determination by not explaining how the finding of a moderation limitation in ability to maintain concentration, persistence, and pace was accounted for in the RFC of but failed to explain how that limitation was consistent with the RFC of simple routine tasks performed two hours at a time.

Under *Mascio*, once an ALJ has made an earlier finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in the RFC assessment or explain why no such limitation is necessary. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). The Fourth Circuit held that an ALJ does not

account for a claimant's limitations in concentration, persistence, and pace by restricting the RFC or the hypothetical question to the vocational expert to simple, routine tasks or unskilled work. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). "As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The functional area of "concentrate, persist, or maintain pace" refers to the ability to "focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, Subpart P, App. 1 § 12.00(E)(3)(includes examples of this mental functioning area).

> At the Listing analysis, the ALJ found moderate limitations in CPP:
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. As noted above, the claimant has been diagnosed with an intellectual disability. However, Dr. Ruffing stated the claimant attended without noticeable distractibility (Exhibit B9F/2).

(Tr. 14).

The ALJ gave an RFC of: simple routine tasks performed two hours at a time. (Tr. 15). The ALJ summarized Plaintiff's allegations regarding both mental and physical impairments. (Tr. 15-16). In the RFC narrative, the ALJ noted:

> As for the claimant's mental impairment, the claimant has been diagnosed with intellectual deficiency (Exhibit B9F). Education records reflect the claimant has limited intellectual functioning along with language delays when he was younger (Exhibit B1F). However, current mental status examinations reflect normal findings (Exhibits B3F/5; B6F/2, 5, 9, 12, 15; B11F/49). Moreover, Dr. Ruffing found the claimant was able to independently and accurately complete an intake questionnaire; demonstrated fairly normal cognitive processing speed; and recall 3 out of 3 words immediately and after a 5 minute delay with interference task (Exhibit B9F/2).

(Tr. 17). The ALJ noted Plaintiff was essentially independent in daily activities, could go to church, shop in stores, clean, and prepare meals. (Tr. 17). The ALJ considered the state agency mental

opinions of record:

> The undersigned has also considered the opinions of the state agency evaluators, Drs. Ward and Harkness, which state the claimant is able to understand and remember simple instructions but no detailed instructions; maintain attention to and perform simple, unskilled tasks; **maintain concentration and attention for periods of at least 2 hours**; respond appropriately to supervision, coworkers, and the public; and be aware of normal hazards and take appropriate precautions, and respond appropriately to changes in a routine work setting (Exhibits B2A; 8A).
>
> Additionally, the undersigned has considered the opinions of the psychological consultative examiner, Dr. Ruffing, which states the claimant is able to understand, comprehend, and carry out simple instructions but may struggle with more complex instructions; attend and focus without noticeable distractibility; **manage concentration for both simple and time-limited tasks and more complex or extended time tasks**; learn and recall new information; interact appropriately with others; manage financial transactions; and may benefit from assistance with more detail decisions making (Exhibit B9F). **These opinions are found to be persuasive in reaching the residual functional capacity limitations adopted herein. For the reasons discussed above, these opinions are reasonably supported by the essentially normal mental status examination findings of record as well as the claimant's lack of mental health treatment and functional activities of daily living**.

(Tr. 17-18)(emphasis added). The ALJ concluded that the RFC "contemplate[d] and include[d]" mental limitations to address Plaintiff's complaints to the extent supported by record evidence. (Tr. 18).

As to Plaintiff's argument that two hour increment RFCs could never provide an accommodation for moderate limitations in CPP because it equates to a normal workday,[4] an ALJ's finding of a normal workday in addition to other limitations may not be error under *Mascio* as long as supported by substantial evidence in the record, such as a physician finding the same. *See Shinaberry v. Saul*, 952 F.3d 113, 121-123 (4th Cir. 2020)(finding an RFC of only simple, routine, and repetitive tasks without any hour increment findings accounted for claimant's moderate CPP

---

[4] *See* SSR 96–9p.

limitations where the ALJ "discussed in detail the psychological evaluations performed by the SSA psychological consultants and Dr. Burlingame, as well as Shinaberry's adult function report, and sufficiently explained" why the RFC accounted for moderate CPP limitations); (ECF No. 17 at 13); *Norris-Gremillion v. Saul,* No. 9:19-CV-917-TMC, 2020 WL 6737669, at *3-4 (D.S.C. Nov. 17, 2020)(discussing an ALJ's reliance on two opinions of two hour limitation and finding no *Mascio* error). As discussed above, the ALJ's finding of two hour increments was discussed in the RFC narrative and citation to substantial evidence was made by the ALJ. The ALJ here complied with *Mascio* and the findings here are more akin to *Shinaberry*. As to Plaintiff's arguments regarding a proper function by function analysis, the ALJ's RFC and RFC narrative is supported by substantial evidence as displayed above. (ECF No. 17 at 15). The RFC discussion by the ALJ permitted meaningful review.[5]

*Physical*

Plaintiff argues the ALJ erred in making the RFC determination as to Plaintiff's standing and walking abilities in the right lower extremity. (ECF No. 17 at 9). The ALJ found a physical RFC of "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; but never climbing ladders, ropes, or scaffolds; and he can have no exposure to workplace hazards." (Tr. 15).

The ALJ discussed Plaintiff's allegations as to his physical impairments:

---

[5] Remand may be appropriate when there is no function by function analysis, but remand is only appropriate when meaningful review is frustrated and the court is "unable to fathom the rationale in relation to evidence in the record. *See Mascio*, 780 F.3d at 636 (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Such is not the case here on either account.

> He testified that he experiences chronic pain and swelling in his right ankle and knee. The claimant stated he is able to stand for no more than 5 minutes, lift no more than 10 pounds, and he must walk with a limp in order to avoid putting weight on his right leg. He also testified that he uses a cane in order to ambulate approximately 4 days per month. The claimant stated pain medications and physical therapy has helped his symptoms somewhat but he continues to experience symptoms (Hearing Testimony; Exhibits B7E; B17E).

(Tr. 15-16). The alleged onset date is July 22, 2017. The ALJ noted in April 2019, Plaintiff was diagnosed with a fracture in his right lower extremity and was temporarily advised to be non-weightbearing for eight weeks, citing Exhibit B11F/41. (Tr. 16). Only one month later, the knee swelling had almost completely resolved, citing Exhibit B11F/35, B11F/37. (Tr. 16). By November 2019, an orthopedic surgeon stated it was healed and doing good and upon exam, Plaintiff ambulated without assistance; the ALJ cited to Exhibit B21F/5. The ALJ noted that the surgeon offered injections and Plaintiff refused.[6] The ALJ noted treatment had been conservative with medication and physical therapy.[7] The ALJ went on to discuss the chronic deformity seen by x-ray in May 2016, possibly related to Plaintiff's allegations of ankle pain. (Tr. 16). However, imaging showed the condition was stable; the ALJ noted some abnormal exams of swelling and tenderness but that Plaintiff had no significant difficulty ambulating. The ALJ noted Dr. Edwin's one-time exam where Plaintiff's right ankle was only slightly swollen, with a somewhat antalgic gait, with full range of motion, no difficulty weight bearing, able to heel and toe walk, navigate stairs, and squat. The ALJ noted ankle treatment had only been medications and physical therapy. (Tr. 16). The ALJ appropriately considered Plaintiff's daily activities in the RFC narrative. Plaintiff managed his

---

[6] Plaintiff also declined knee brace and increase of Mobic in July 2019. (Tr. 459).

[7] Physical therapy discharged Plaintiff in December 2019, less than twelve months after the original fracture, finding that all therapy goals had been met. (Tr. 525).

personal care, attended church, shopped in stores, cleaned, and prepared meals. (Tr. 17). Notably, the ALJ went further than the physical state agency non-examining consultants' opinions and provided Plaintiff additional postural and environmental limitations above those opinions; the ALJ expressly noted the limitations addressed Plaintiff's complaints of ankle and knee pain. (Tr. 17). As to Plaintiff's orthopedist, the ALJ noted no further restrictions were noted after June 2019 and only mild signs were noted at the December 2019 discharge. The ALJ found: "Dr. Leong's opinions are persuasive as they are supported and consistent with a healing fracture. It is noted that no permanent final restrictions were given and mild signs with good healing were the final treatment notes." (Tr. 18). The ALJ concluded that Plaintiff had physical problems and the actual objective functional limitations on examination were not that significant to render him disabled and that the RFC contemplated and included exertional, postural, and environmental limitations to address his complaints only to the extent they were supported by the record. (Tr. 18).

The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Based upon the foregoing, substantial evidence supports the ALJ's RFC.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*,

483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
| October 13, 2021<br>Florence, South Carolina | s/ Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge |